**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| SHAYNE E. TODD,<br><br>      Plaintiff,<br><br>   v.<br><br>LYNDA PETERSON et al.,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:04-CV-984-CW<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Samuel Alba |

Plaintiff, Shayne E. Todd, an inmate at the Central Utah Correctional Facility, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2009). Plaintiff's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915 was granted. *See* 28 U.S.C.A. § 1915 (West 2009). Before the Court is Defendant Lynda Peterson's Motion for Summary Judgment.

**ANALYSIS**

**I. Background**

Plaintiff's Amended Complaint, filed February 9, 2006, asserts that prison officials violated the First Amendment by denying Plaintiff delivery of certain literature deemed to be obscene. The Amended Complaint names "Sergeant Officer Peterson"

and "John Does 1-3" as defendants[1] and seeks compensatory and punitive damages, declaratory and injunctive relief, fees and costs, and "such other legal and equitable relief as the Court deems just and proper."

On screening under 28 U.S.C. § 1915(e)(2)(b) the Court dismissed Plaintiff's due process claim and ordered official service of Plaintiff's remaining First Amendment claim upon Defendant Peterson.  Defendant was subsequently directed to prepare a *Martinez* report addressing Plaintiff allegations.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  The *Martinez* Report was filed on November 9, 2007, and contained copies of statutes deemed relevant by Defendant, including Utah Code Section 64-13-41.  *See* Utah Code Ann. § 64-13-41 (West 2009).

On February 7, 2008, in response to the *Martinez* Report, Plaintiff filed a Notice of Claim of Unconstitutionality of State Statute under 28 U.S.C. § 2403 and DUCivR 24-1 challenging the validity of Utah Code Section 64-13-41.  The notice was subsequently transmitted by the Clerk of Court to the Utah Attorney General.

On March 14, 2008, Defendant Peterson filed the present

---

[1] Neither the Complaint nor the Amended Complaint specifically state whether Peterson is named in her individual or official capacity.  Plaintiff has also never properly identified the John Doe defendants.

motion for summary judgment on the basis of qualified immunity. Although Peterson's supporting memorandum briefly addresses Plaintiff's claim of unconstitutionality it asserts that the issue is not relevant to the present motion.  Following a brief extension, Plaintiff filed a timely opposition brief, however, Plaintiff stated that he was unable to fully respond because he was still awaiting copies of relevant case law.  On June 6, 2008, nearly thirty days after submission of Defendant's reply brief, Plaintiff filed a motion for extension of time "in which to reply to the states supported modification of their prior response." (Doc. no. 47.)  Despite this curious language, Plaintiff went on to explain that he was still having difficulty obtaining copies of relevant case law and needed additional time to further respond.  Construing Plaintiff's motion as a request for leave to file a surreply under DUCivR 7-1(b)(3)(A), and given the lack of objection from Defendant, the Court withheld ruling on Defendants summary judgment motion.  To date, however, the Court has not received any additional filings from either party.  Concluding that Plaintiff has had more than ample time to fully respond, the Court now rules on Defendant's motion.

## II. Summary Judgement Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Cellotex v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." Cellotex v. Catrett, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. Johnson v. City of Bountiful, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." Id. Federal Rule of Civil Procedure 56(e) requires a nonmovant "that

would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, 144 F.3d 664, 671 (10th Cir. 1998)*.  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling, 968 F.2d 1022, 1024 (10th Cir. 1992)*.  Mere allegations and references to the pleadings will not suffice.  However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999)*.

### III. Factual Record

The material facts, taken in the light most favorable to Plaintiff, the non-moving party, are as follows:[2]  At all times relevant to this suit Plaintiff was incarcerated at the Central Utah Correctional Facility (CUCF).  Defendant Peterson was an Officer and property supervisor at CUCF.  In May of 2004 the CUCF mail room received five books addressed to Plaintiff from a vendor called Paper Wings.  The books were entitled "Mari-Go-

---

[2] The relevant facts presented here are taken primarily from Defendant's *Martinez* Report and are essentially undisputed.

Round," "Party Girl," "Knights in the Garden of Spain," "The Fuller Adventures of Sharon," and "Maid to Order."  Based on the outside covers of the books, which bore pictures of women in lingerie and additional text, Peterson determined that the books were commercially published, contained graphic sexual material, and were potentially prohibited under CUCF mail policies.  Peterson then looked through the books to further evaluate whether they complied with CUCF incoming mail, property and contraband policies.  Peterson found that portions of the books described graphic sexual conduct including rape, sadomasochism, homosexuality, masturbation and pedophilia.  Peterson also checked the CUCF approved publishers list and found that none of the books were on the list of accepted commercially available publications.  Based on these findings Peterson concluded that the books did not comply with CUCF incoming mail policies and denied delivery of them to Plaintiff.  In accordance with CUCF procedures Peterson completed a denied property notification form stating that the books were returned to the vendor.  In the comments section of the form Peterson listed the book titles and noted "5 books of pornographic nature no legitimate literary value." (Compl. Ex. A.)  A copy of the notice was provided to Plaintiff who filed a timely grievance challenging rejection of the books.  After being denied relief at two lower levels

Plaintiff appealed to the final administrative grievance level where his grievance file was reviewed by hearing officer Craig Balls. After examining copied pages of the denied books and consulting relevant Utah statutes and CUCF policies, Balls upheld the denial of Plaintiff's grievance based on his opinion that Peterson reasonably interpreted and applied CUCF policies. In his letter denying Plaintiff's final administrative appeal Balls states, "[s]exually orientation [sic] material such as the books you are requesting to be approved violate State Code and Department Policy." (Compl. Ex. D at 1.)

### IV. Motion for Summary Judgment

Peterson asserts in her motion for summary judgment that she did not violate Plaintiff's constitutional rights, and, even if her actions were unconstitutional she is entitled to qualified immunity against Plaintiff's damages claims because the right at issue was not clearly established. Peterson further asserts that Plaintiff's claims for injunctive relief also fail because she is sued only in her individual capacity and, even in her official capacity, she does not have authority to provide the injunctive relief sought. Finally, Peterson argues that Plaintiff's claim of unconstitutionality is irrelevant because the state statute Plaintiff challenges did not form the basis for her actions. The Court will first address Plaintiff's qualified immunity argument.

### A. Qualified Immunity Standard

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985). Thus, the Supreme Court has determined that immunity questions should be addressed at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 537 (1991).

In *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), the Supreme Court laid out a two-step process for making qualified immunity determinations. Under *Saucier*, courts were first required to answer the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201, 121 S. Ct. at 2156. If the answer to that question was affirmative, courts next asked "whether the right was clearly established . . . in light of the

8

specific context of the case, not as a broad general proposition." Id.

Recently, however, in *Pearson v. Callahan*, 555 U.S. —--, 129 S. Ct. 808 (2009), the Supreme Court ruled that the "inflexible" two-step inquiry mandated by *Saucier* is no longer required. Under *Pearson*, courts are now free to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818. Thus, where it is possible to "rather quickly and easily decide that there was no violation of a clearly established law" courts can conserve judicial resources by "avoid[ing] the more difficult question whether the relevant facts make out a constitutional question at all." Id. at 820. This approach is also intended to reduce the risk that "constitutional questions may be prematurely and incorrectly decided in cases where they are not well presented." Id.

### B. Clearly Established Law

Given the limited scope of the present motion, and the scant evidentiary record available, the Court will bypass the question of whether Peterson's actions violated a constitutional right and proceed directly to the issue whether the right asserted here was clearly established.

A law is clearly established for qualified immunity purposes if there is a United States Supreme Court or Tenth Circuit decision directly on point, or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions. *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 598 (2004). If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the [qualified] immunity defense." *Saucier*, 533 U.S. at 205-06. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

The first step in evaluating whether an asserted right is clearly established is to properly define the scope of the right at issue. Although Plaintiff asserts that the constitutional right raised here is an inmate's general right to freedom of speech under the First Amendment, this formulation is far to broad. For qualified immunity analysis the asserted right must be viewed "in light of the case's specific context, not as a

broad general proposition." *Saucier*, 533 U.S. at 201. And, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Id.

While it is true that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877 (1979), the Supreme Court has held that a prison inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 2806 (1974). Thus, in the free-speech context prison officials violate the First Amendment when they engage in censorship of material for reasons unrelated to legitimate penological interests. Id. at 824.

The record here shows that regardless of whether a constitutional violation actually occurred, it would not have been clear to a reasonable officer in Peterson's position that her actions were unlawful. Peterson states in her affidavit that she rejected Plaintiff's books based on her interpretation of prison policies. (*Martinez* Report Ex. A ¶ 14.) In her supporting memorandum Peterson specifically cites Utah Department of Corrections Division of Institutional Operations General Order

broad general proposition." *Saucier*, 533 U.S. at 201. And, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Id.

While it is true that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877 (1979), the Supreme Court has held that a prison inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 2806 (1974). Thus, in the free-speech context prison officials violate the First Amendment when they engage in censorship of material for reasons unrelated to legitimate penological interests. Id. at 824.

The record here shows that regardless of whether a constitutional violation actually occurred, it would not have been clear to a reasonable officer in Peterson's position that her actions were unlawful. Peterson states in her affidavit that she rejected Plaintiff's books based on her interpretation of prison policies. (*Martinez* Report Ex. A ¶ 14.) In her supporting memorandum Peterson specifically cites Utah Department of Corrections Division of Institutional Operations General Order

03-001 Section FDr03/03.04A.6., which states: "In addition to sexually-explicit material or materials containing nudity, mail shall also be prohibited and denied delivery if it graphically portrays any of the following sexual conduct: a. bestiality; b. sado-masochism; c. pedophilia; d. rape; e. homosexuality; and/or f. masturbation." (Def.'s Supp. Mem. Ex. A at 33.) Plaintiff does not deny that the rejected books included written descriptions of one or more of the types of sexual conduct prohibited under FDr03/03.04A.6., however, he asserts that the words "graphically portrays" must be read in conjunction with relevant Utah statutes and federal case law to include only pictorial depictions. Defendant, on the other hand, argues that the prohibition also applies to "graphic *textual* depictions." (Def.'s Supp. Mem. at 7 (emphasis added).) Plaintiff contends that if the policy is interpreted to include textual depictions then the regulation, and possibly the Utah statute on which it is based, are unconstitutional.

While Plaintiff's argument regarding the constitutionality of the regulation appears to have some merit, the Court need not resolve the question here.[3] Even if the prison regulation is

---

[3] Peterson denies that her actions were based on any state statute and, therefore, gives short shrift to Plaintiff's claim of unconstitutionality. The Court notes, however, that Craig Balls' letter denying Plaintiff's final grievance specifically

12

ultimately found to be unconstitutionally over-broad, or if it was misinterpreted by Peterson in this case, there is no doubt that Peterson's actions were based on a reasonable interpretation of validly implemented prison policies.  Peterson clearly had substantial grounds, based on the wording of the prison regulations in effect at the time, to believe she had legitimate justification for her actions.  *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1196 (10th Cir. 2001) ("A mistake of law may be 'reasonable' where the circumstances 'disclose substantial grounds for the officer to have concluded he had a legitimate justification under the law for acting as he did.'"(quoting *Saucier*, 533 U.S. at 208)).  Moreover, Plaintiff has not come forward with a Supreme Court or Tenth Circuit opinion--nor is the Court aware of any--that would have placed Peterson on notice that the regulation itself, or her interpretation of it, was clearly unconstitutional.

Accordingly, the Court finds that Plaintiff has not met his

---

refers to "State Code," while his affidavit refers to "USP policy and statute." (Compl. Ex. D at 1; Balls Decl. ¶ 8.)  Moreover, the regulation relied on by Peterson, FDr03/03.04, specifically refers to Utah Code Ann. § 64-13-41.  Finally, as Defendant readily admits, the language of the prison regulations is strikingly similar to that of § 64-13-41, with the crucial exception that § 64-13-41 applies only to "pictorial depictions."  The Court agrees, however, that the claim of unconstitutionality has no bearing on Peterson's entitlement to qualified immunity.

13

burden of showing that Peterson's actions violated a clearly established constitutional or statutory right.  Peterson is, therefore, entitled to qualified immunity against Plaintiff's claims for money damages and her motion for summary judgment must be granted.

## V. Remaining Claims

Although Peterson is immune from Plaintiff's damages claims, Plaintiff's claims for declaratory and injunctive relief are not barred by qualified immunity.  *Kikumura v. Hurley*, 242 F.3d 950, 962-63 (10th Cir. 2001).  However, even assuming that the Court has jurisdiction over Peterson in her official capacity, Peterson clearly does not have authority to grant the injunctive relief Plaintiff seeks, nor is Peterson in a position to defend the validity of prison regulations or state statutes.  Thus, the Court concludes that Peterson must be dismissed as a defendant in this lawsuit.

Given the lack of a proper defendant this case cannot proceed without further amendment of the pleadings.  Thus, if Plaintiff wishes to pursue his claims for declaratory and injunctive relief he must promptly move to amend his Complaint to name a proper defendant (i.e. Director of the Utah Department of Corrections).  If Plaintiff does not file a properly supported motion within thirty days this case will be closed.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendant Lynda Peterson's Motion for Summary Judgment is **GRANTED** and Peterson is **DISMISSED** as a defendant in this case; and,

(2) Plaintiff may file a motion to amend his pleadings in accordance with this Order within thirty days.  Failure to do so will result in this case being closed.

DATED this 23rd day of March, 2009.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge